# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| BILLY JOE EMBERTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:21-cv-00757 |
| ) | Judge Aleta A. Trauger |
| BOARD OF TRUSTEES OF PLUMBERS ) | |
| AND PIPEFITTERS LOCAL 572 ) | |
| PENSION FUND and SOUTHERN ) | |
| BENEFIT ADMINISTRATORS, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM & ORDER

Southern Benefit Administrators, Inc. ("Southern") has filed a Motion to Dismiss (Doc. No. 12), to which Billy Joe Emberton has filed a Response (Doc. No. 14). For the reasons set out herein, the motion will be denied.

## I. BACKGROUND[1]

Emberton is a longtime member of the Plumbers and Pipefitters Local 572. (Doc. No. 1 ¶¶ 6–7.) In June of 2016, Emberton accepted a pipefitting job at National Aerospace Solutions ("NAS"). (*Id.* ¶ 13.) According to Emberton, NAS does not have a collective bargaining agreement with Local 572, opting instead to work with the Metal Trades Department of the AFL-CIO. Emberton argues that, because he is no longer employed by an entity that does business with Local 572, he is, for the purposes of Local 572's benefits plans, "retired." (*Id.* ¶¶ 16–19, 37.)

On November 24, 2018, Emberton filed an application for an early retirement benefit through the Plumbers & Pipefitters Local 572 Pension Fund, based on his belief that he would

---

[1] The facts herein are from the Complaint and are taken as true for the purposes of Rule 12(b)(6).

become eligible for those benefits upon reaching early retirement age on January 15, 2019. (Doc. No. 1 ¶ 21.) On December 4, 2018, Emberton received a letter from a plan administrator seeming to confirm his eligibility. (Id. ¶ 22.) On December 17, 2018, however, Emberton received a second letter stating that, after the final review of his file, it was determined that he was not eligible to receive benefits because he was not yet retired. (*Id.* ¶ 23.) Emberton appealed that decision unsuccessfully. (*Id.* ¶ 24.)

The motion currently pending, however, is not about whether Emberton is entitled to benefits. Rather, it is about whom Emberton can sue to seek vindication of his position. On October 1, 2021, Emberton sued (1) the Pension Fund itself and (2) Southern, pursuant to the Employee Retirement Income Security Act ("ERISA"), seeking "[a]n award of damages for non-payment of early retirement benefits totaling $1,789.00 per month for the time period from February 2019 to present, plus interest" as well as declaratory relief clarifying his rights under the plan. (*Id.* at 7.) Not long thereafter, Southern filed a Motion to Dismiss, arguing that only the Fund should have been sued. (Doc. No. 12.)

The written text of the Complaint discusses Southern's role in the pension plan minimally, if at all. Emberton has, however, included a number of exhibits with the Complaint, and "a 'copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." *Jones v. City of Cincinnati*, 521 F.3d 555, 561 (6th Cir. 2008) (quoting Fed. R. Civ. P. 10(c)). For example, Emberton has attached the Summary Plan Description, which provides more detail regarding how the plan functioned, and he is permitted to rely on that exhibit for the purpose of opposing the Motion to Dismiss. (Doc. No. 1-1.)

The Summary Plan Description does not mention Southern by name, but, in Southern's briefing, it explains that that is because Southern "took over as Third Party Administrative

2

Manager following issuance of the revised [Summary Plan Description] in 2015." (Doc. No. 12-1 at 4 n.1.) The Summary Plan Description does discuss the role of the Third Party Administrative Manager, albeit briefly. The Administrative Manager is mentioned in the context of the plan's review procedures, which include the provision that, "[i]f you do not wish to make a personal appearance before the Board of Trustees, the Administrative Manager will present all written statements and other pertinent information on your behalf." (Doc. No. 1-1 at 7.) The Administrative Manager comes up again in the context of plan interpretation:

> **THE TRUSTEES INTERPRET THE PLAN**
>
> Any interpretation of the Plan's provisions rests with the Board of Trustees. However, the Board of Trustees has authorized the Fund Office staff to handle routine requests from Participants regarding eligibility, benefits, and application procedures. But, if there are any questions involving interpretation of any Plan provisions, the Administrative Manager will secure from the Board of Trustees a final determination for you. No person other than a Trustee or member of the Fund Office staff, or one of the Trustees' professional advisors, acting with the consent of the full Board of Trustees, may provide interpretation of Plan provisions.

(*Id.* at 54.) This mention, like the first, discusses the Administrative Manager as a go-between connecting the beneficiary to the Board of Trustees.

The Complaint's other exhibits provide a few other clues regarding Southern's role. The correspondence that Emberton received from the plan administrator came on letterhead including the following text:

> **PLUMBERS AND PIPEFITTERS LOCAL NO. 572**
> **PENSION FUND**
> Administered by Southern Benefit Administrators, Incorporated

(Doc. No. 1-3 at 1; Doc. No. 1-4 at 1; Doc. No. 1-5 at 1.) The denial letter includes discussion that bears on the respective responsibilities of Southern and the Board of Trustees, but its use of the passive voice results in some ambiguity in that regard:

3

> This letter is regarding your recently received application for Early Retirement benefits through the Plumbers & Pipefitters Local 572 Pension Fund. Upon receipt, your application, along with all supporting fund documents, was reviewed in accordance with the rules and procedures which govern this plan, with the following eligibility determination being made. . . .
>
> After a final review of your file, it was found that you are currently involved in employment that disqualifies you from meeting the criteria of being Retired, as defined above. Due to an oversight prior to this final approval, paperwork was sent to you suggesting you were eligible to begin receiving a benefit beginning February 1, 2019. However, upon the discovery of your current employment activity, this office has no choice but to deny your application for benefit. . . .
>
> If you choose to make a written appeal, the plan administrator will present all documents [on] your behalf for the Board of Trustees to review at their next scheduled board meeting with a letter notifying you of their decision.

(Doc. No. 1-4 at 1.) While this language does describe aspects of the intermediary role assigned to the administrative manager, it also appears consistent, at least potentially, with a greater role for the "plan administrator," more akin to the handling of "routine requests" that the plan suggests may be handled by the "Fund Office." (Doc. No. 1-1 at 31.) The letter informing Emberton that his appeal was unsuccessful, however, does attribute that initial decision to the "fund office." (Doc. No. 1-5 at 1.)

## II. LEGAL STANDARD

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can

4

ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

### III. ANALYSIS

ERISA creates a cause of action for benefits due, 29 U.S.C. § 1132(a)(1)(B), but it does not expressly state, in the relevant subsection, whom such a claim should be filed *against*. More broadly, however, ERISA imposes potential liability on "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries" by the statute, 29 U.S.C. § 1109(a). As a practical matter, then, "[f]iduciary status is the key to unlocking ERISA's civil-enforcement scheme," *Briscoe v. Fine*, 444 F.3d 478, 486 (6th Cir. 2006), at least insofar as the plaintiff wishes to name any defendant other than the plan itself.

A person is a fiduciary for an ERISA plan "to the extent (i) he exercises any discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary

5

responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A); *see Pegram v. Herdrich*, 530 U.S. 211, 223 (2000). "ERISA . . . defines a 'person' to include a corporation." *Hamilton v. Carell*, 243 F.3d 992, 998 (6th Cir. 2001).

ERISA defines "fiduciary" "not in terms of formal trusteeship, but in functional terms of control and authority over the plan." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993) (emphasis and internal citation omitted); *see also Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir.1999) ("[T]he definition of a fiduciary under ERISA is a functional one, is intended to be broader than the common law definition, and does not turn on formal designations such as who is the trustee."); *Briscoe*, 444 F.3d at 486 ("This court employs a functional test to determine fiduciary status.") (citation omitted). Accordingly, the definition of "fiduciary" includes "not only the persons named as fiduciaries by a benefit plan, but also anyone else who exercises discretionary control or authority over the plan's management, administration, or assets." *Mertens*, 508 U.S. at 262 (citations omitted).

Emberton does not appear to dispute the aforementioned general principles of law. Rather, Emberton argues that the exhibits to the Complaint suggest that Southern "acted as a third party administrator of the Plan and advisor to the Pension Plan" and, as such, "did not have a passive role in the Plaintiff's application and appeal process." (Doc. No. 14 at 4.) Sixth Circuit caselaw confirms that "the proper defendant in an ERISA action concerning benefits"—or at least one proper defendant—"is the plan administrator." *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 522 (6th Cir. 2010) (citing *Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir. 1988)); *see also LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 843 (5th Cir. 2013) (discussing caselaw of other circuits involving proper defendants in ERISA benefits cases). Moreover, while the plan documents do largely reserve ultimate discretion to the trustees,

6

they explicitly acknowledge that the trustees may delegate some of that power to "professional advisors," which is consistent with Emberton's theory of the case. (Doc. No. 1-1 at 54.)

"Fiduciary status is a fact-intensive inquiry," such that resolution of the issue is often "inappropriate for a motion to dismiss.'" *Wallace v. Int'l Paper Co.*, 509 F. Supp. 3d 1045, 1052 (W.D. Tenn. 2020) (quoting *In re Regions Morgan Keegan ERISA Litig.*, 692 F. Supp. 2d 944 (W.D. Tenn. 2010)). Of course, if all of the facts necessary for resolving the issue are set out in the Complaint, the court can consider them. As a practical matter, however, the division of responsibilities between "possible decision makers" involved in running a plan can be "something of a black box" until after a complaint is filed. *Rankin v. Rots*, 278 F. Supp. 2d 853, 879 (E.D. Mich. 2003). Neither the pension fund nor Southern itself appears to have done much to give Emberton a glimpse into that black box; rather, the correspondence that Emberton received spoke vaguely of how his application "was reviewed" until it "was found" that he had prior employment that *someone* determined disqualified him from benefits, despite the fact that he had already been told, mere days earlier, that he was eligible. In the face of that ambiguous language, and in light of the fact that third-party administrators are at least sometimes permissible defendants in ERISA benefits cases in this circuit, Emberton's including Southern as a defendant was appropriate.

It may well be that the division of responsibilities between entities involved in the plan was exactly what Southern says it was. Under Rule 12(b)(6), however, the court can only consider what was alleged in the Complaint, including through the Complaint's exhibits. Because those exhibits support a plausible inference that Southern exercised discretion with regard to the denial of Emberton's benefits, the court accordingly will deny the pending motion.

7

Case 3:21-cv-00757   Document 15   Filed 08/01/22   Page 7 of 8 PageID #: 106

## IV. CONCLUSION

For the foregoing reasons, Southern's Motion to Dismiss (Doc. No. 12) is hereby **DENIED**. The initial case management conference is **RESET** for August 29, 2022 at 2:30 p.m.

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge

8

Case 3:21-cv-00757   Document 15   Filed 08/01/22   Page 8 of 8 PageID #: 107