IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KATHY EMBERTON AS ADMINISTRATOR OF THE ESTATE OF BILLY JOE EMBERTON, <br><br> Plaintiff, <br><br> v. <br><br> BOARD OF TRUSTEES OF PLUMBERS AND PIPEFITTERS LOCAL 572 PENSION FUND and SOUTHERN BENEFIT ADMINISTRATORS, INC., <br><br> Defendants. | Case No. 3:21-cv-00757 <br> Judge Aleta A. Trauger |

## MEMORANDUM

This action is governed by the Employee Retirement Income Security Act ("ERISA"). Now before the court are the parties' cross-motions for Judgment on the Administrative Record.[1] (Doc. Nos. 43, 44.) For the reasons set forth herein, the defendants' motion will be granted, and the plaintiff's motion will be denied.

---

[1] The plaintiff's motion is styled as a Motion for Summary Judgment, but she acknowledges in her supporting Memorandum that summary judgment motions under ERISA are not governed by Federal Rule of Civil Procedure 56 and that a ruling on the motion will turn on the interpretation of the underlying plan documents. (Doc. No. 45, at 3.) The court construes the plaintiff's motion as one for judgment on the administrative record. In any event, it appears that the relevant background facts are undisputed, and the parties' minor quibbles regarding whether matters outside the record may be considered and whether the plaintiff's motion was properly styled as a summary judgment motion are immaterial, as neither relies on matters outside the record.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

### A. The Plaintiff's Application for Early Retirement Benefits

The plaintiff's decedent, Billy Joe Emberton, was a dues-paying member of the Plumbers and Pipefitters Local 572 ("Local 572" or "the Union") from 1981 through 2019.[3] Local 572 is a sponsor of the Plumbers and Pipefitters Local 572 Pension Fund ("Pension Fund"), which provides benefits to participants, including members of Local 572, pursuant to a pension plan ("Plan") that is governed by ERISA. Although the plaintiff's pleadings do not state as much and the parties do not address the issue, it appears from the record that defendant Southern Benefit Administrators, Inc. ("SBA") and defendant the Board of Trustees of the Plumbers and Pipefitters Local 572 ("Trustees") share in the administration of the Plan.[4]

The record does not contain information about Emberton's employment between 1981 and 2003, except to indicate that he was a dues-paying member of the Union and that his employer contributed to the Pension Fund on his behalf during that time frame. In April 2003, Emberton accepted a job at Arnold Engineering Development Complex, working for Sverdrup Engineering. He left Sverdrup Engineering in December 2003 to work for Jacobs Engineering as a pipefitter. He worked for Jacobs Engineering as a pipefitter until June 2016, when he began working for National Aerospace Solutions ("NAS"), also as a pipefitter. He worked for NAS as a pipefitter until January 2022. It is undisputed that NAS never contributed to the Pension Fund on behalf of

---

[2] The facts for which no citation is provided are drawn from the pleadings and are undisputed unless otherwise noted.

[3] Emberton died after commencing this action. His widow, Kathy Emberton, as administrator of his estate, was subsequently substituted as the plaintiff, pursuant to Federal Rule of Civil Procedure 25(a). (*See* Doc. Nos. 26, 39.)

[4] The court previously denied SBA's Motion to Dismiss, which argued that it was not a proper defendant in this case. The parties have not reprised that contention in their present motion.

Emberton or any other employee. (*See* Doc. No. 41, Answer ¶ 36 ("Defendants admit that no contributions were made to the Local 572 Pension Fund by NAS.").)

On November 24, 2018, Emberton filed an Application for Benefits, specifically "Normal Retirement Benefits," with the Pension Fund. (*See* Doc. No. 25-2, at 1.) He indicated on this form that his "Last Day Worked" was April 20, 2003. (*Id.*) His requested retirement date was January 15, 2019. (*Id.*) The SBA construed his application as an application for early retirement, rather than an application for "Normal Retirement Benefits," apparently because Emberton was turning 62 on January 15, 2019, rather than reaching the "normal" retirement age of 65. (*See* Compl. ¶ 21; Doc. No. 25-2, at 17 (Dec. 4, 2018 letter from SBA to Emberton referencing his "application for an Early Retirement Benefit").) SBA initially approved the application, with an anticipated start date for the payment of a monthly benefit to begin on February 1, 2019. (*Id.*)

By letter dated December 17, 2018, however, SBA notified Emberton that, upon further review, it had determined that Emberton was not entitled to Early Retirement Benefits, because he had not retired under the Plan definition of "Retire." (*Id.* at 23.) As a result, his application was denied. (*Id.*)

The Plan, executed on January 22, 2015 but with an effective date of April 1, 2014 (Doc. No. 25-5, at 1, Doc. No. 25-6, at 14), provides that a Plan Participant is eligible for the Early Retirement Benefit if he "Retire[s] on or after April 1, 1976," has at least five years of service at the time of retirement, and is between the ages of 55 and 65. (Doc. No. 25-5, at 25 (Plan ¶ 5.01).) There is no dispute that Emberton was a Plan Participant, as defined by Sections 1.18 and 2.01 of the Plan, had more than five years of service at the time of his desired early retirement date, and was between 55 and 65 years old. As such, he was eligible under the Plan for the Early Retirement Benefit if he had "retired" by his proposed retirement date, as defined by the Plan.

3

"Retire" is defined in the Plan as "a Participant's complete cessation of: (i) any kind of work for an Employer, or (ii) any plumbing or pipefitting work in the construction or maintenance industries within the geographical area of the Fund." (*Id.* at 15 (Plan § 1.24).) However, in a Plan Amendment executed on January 17, 2019 but effective retroactively beginning November 20, 2018 (*i.e.*, just four days before Emberton submitted his application for retirement benefits), the Plan definition of "Retire" in Section 1.24 was revised to state as follows:

> The term "Retire" shall mean a Participant's complete cessation of: (i) any kind of work for an Employer, and (ii) any plumbing or pipefitting work in the construction or maintenance industries within the geographical area of the Fund, for a minimum period of six full consecutive calendar months.

(Doc. No. 25-6, at 29 (Amendment to Plan § 1.24); *id.* at 46 (same document).)

The Plan defines "Employer" as

> any association or individual employer who has duly executed and who is bound by a collective bargaining agreement in effect with the Union requiring periodic payments to the Trust Fund for the purpose of providing and maintaining benefits for the employees of such employer. Further, any employer not a party to such collective bargaining agreement who satisfies the requirements for participation as established by the Trustees and who agrees to be bound by the Trust Agreement shall be considered an Employer. For purposes of this Plan, the term "Employer" shall also include Local Union # 572 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO, the Trustees of the Plumbers and Pipefitters Local # 572 Pension Fund, collectively, and the Mechanical Contractors Association of Nashville, Incorporated.

(Doc. No. 25-5, at 12 (Plan § 1.09).) "Union" is specifically defined as the "Plumbers and Pipefitters Local Union #572 of the United Association of Journeyman and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO, Nashville, Tennessee." (*Id.* at 17 (Plan § 1.31).)

SBA's denial of Emberton's application for Early Retirement Benefits, as stated in the December 17, 2018 letter, was based on the conclusion that Emberton was "currently involved in

4

employment that disqualifie[d] [him] from meeting the criteria of being Retired" as defined in the Plan. (Doc. No. 25-2, at 23.)

Emberton, through his attorney at the time, appealed the SBA's decision and appeared for a hearing on his appeal at the Trustees' April 12, 2019 meeting. (*See* Doc. No. 25-8, at 1 (Minutes of Apr. 12, 2019 Board Meeting).) According to the Meeting Minutes, the plaintiff acknowledged that he "had not actually ceased employment at the time of his 'retirement,'" but he argued in support of his appeal that he was not working for an "Employer" as defined by the Plan. He also claimed that he knew of other individuals who were receiving a retirement benefit from the Pension Fund, even though they did not meet the definition of "retired," and argued that the Trustees were not fairly and equitably administering the Plan. (*Id.* at 1–2.)

The Trustees unanimously decided to uphold SBA's decision to deny the application for Early Retirement Benefits. (*Id.* at 2.) According to the Meeting Minutes, the decision was based on the Trustees' conclusion that Emberton did not satisfy the eligibility requirements for Early Retirement Benefits, because he

> continued to work for an Employer in the plumbing and pipefitting industry who had a duly executed collective bargaining agreement in effect with Local 572. Specifically, the trustees referenced the agreement by and between [NAS] [Emberton's employer] and Air Engineering Metal Traces Counsel and Affiliated Unions AFL-CIO. The trustees indicated that Local 572 was an affiliated local and therefore a party to the agreement.

(*Id.*)[5]

An exchange of emails between SBA's administrator, Seth Caldwell, and Eric Coons, a Trustee, documents that the Trustees confirmed prior to hearing the appeal that Emberton was

---

[5] The Minutes indicate that the SBA was also directed to undertake an investigation into the plaintiff's allegations that other individuals were receiving a benefit from the Pension Fund, even though they were not "retired" under the Plan. (Doc. No. 25-8, at 3.)

"still working in the trade" as of the date of the consideration of his application. (Doc. No. 25-2, at 37.) The April 12, 2019 Meeting Memo states that the decision to deny benefits was based on confirmation that "Mr. Emberton was actively employed in the trade." (*Id.* at 38.)

Emberton was notified of the Trustees' decision by letter dated April 16, 2019. (Doc. No. 25-3, at 1–2.) The letter misquotes the amended definition of "Retire"[6] and states that the Trustees had unanimously agreed that Emberton did not meet that definition, because he "continue[d] to work for an Employer in the plumbing and pipefitting industry who has a duly executed collective bargaining agreement in effect with Local 572." (*Id.* at 2.)[7]

Emberton filed this lawsuit in October 2021. Kathy Emberton was permitted to amend the Complaint and to be substituted as the plaintiff in early 2023, after the death of her husband.[8] The Amended Complaint (Doc. No. 40) contends that the Trustees improperly denied Emberton's appeal and that they amended the Plan improperly in order to deny his claim for early retirement benefits. The defendants filed a complete copy of the administrative record (Doc. No. 25 and attachments), and the parties thereafter filed their cross-motions for judgment on the record. Both

---

[6] The letter states that the Plan definition of "Retire," as "refined in an amendment dated November 20, 2018," was "a participant's complete cessation of: (1) any kind of work for an Employer, or (2) any plumbing or pipefitting work in the construction or maintenance industries within the geographical area of the Fund, for a minimum of 6 (six) full consecutive calendar quarters." (Doc. No. 25-3, at 1.) As quoted above, the amended definition actually is "[a] Participant's complete cessation of: (i) any kind of work for an Employer, *and* (ii) any plumbing or pipefitting work in the construction or maintenance industries within the geographical area of the Fund, for a minimum period of six full consecutive calendar *months*." (Doc. No. 25-6, at 29 (emphasis added).)

[7] Emberton eventually retired with pension benefits effective August 1, 2022, after reaching "normal" retirement age (65). (*See* Doc. No. 25-3. at 9.)

[8] Kathy Emberton is referred to herein as the "plaintiff," and Billy Joe Emberton is referred to as "Emberton."

6

parties filed Memoranda of Law in support of their motions, and each filed a Response to the other's motion and a Reply in support of its own motion. (Doc. Nos. 43-1, 45, 47, 48, 49, 52.)

## II. STANDARD OF REVIEW

Section 502(a)(1)(B) of ERISA authorizes an individual to bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Judicial review of the denial of benefits challenged under this provision is *de novo*, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1063 (6th Cir. 2014). "If a plan affords such discretion to an administrator or fiduciary, [the court reviews] the denial of benefits only to determine if it was 'arbitrary and capricious.'" *McClain*, 740 F.3d at 1064 (6th Cir. 2014). Here, the parties agree that the "arbitrary and capricious" standard of review applies. The parties also generally agree that, when reviewing an administrator's denial of benefits pursuant to an ERISA plan, the court "may typically review only evidence contained in the administrative record." *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 660 (6th Cir. 2004) (quoting *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 613 (6th Cir. 1998)).

"[T]he arbitrary or capricious standard is the least demanding form of judicial review of administrative action." *Judge v. Metro. Life Ins. Co.*, 710 F.3d 651, 658 (6th Cir. 2013) (quoting *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989)). "A plan administrator's decision will not be deemed arbitrary or capricious so long as 'it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome.'" *Id.* (quoting *Davis*, 710 F.3d at 693). In other words, the court will uphold a benefits determination if it is "rational in light of the plan's provisions." *Id.* (quoting *Jones*, 385 F.3d at 661). Although the standard of review is

7

"extremely deferential," the court does not simply "rubber stamp the administrator's decision." *Jones*, 385 F.3d at 660–61.

III. ANALYSIS

In support of her motion, the plaintiff quotes the Plan's definition of "Retire" as "a Participant's complete cessation of: (i) any kind of work for an Employer, or (ii) any plumbing or pipefitting work in the construction or maintenance industries within the geographical area of the Fund." (Doc. No. 45, at 5; *see also* Doc. No. 25-6, at 29 (Plan § 1.24).) Pointing to the "or" between clauses (i) and (ii), she argues that, under the plain language of this definition, a participant must meet only one of these two requirements to be deemed "retired." (*Id.*) She effectively concedes that Emberton did not meet the second clause, as he continued to be employed by NAS as a pipefitter, apparently within the geographic area of the Fund, as those terms are defined by the Plan.

The plaintiff contends, however, that NAS does not qualify as an "Employer" under the Fund, principally because it was not "bound by a collective bargaining agreement with [Local 572] requiring periodic payment to the Trust Fund for the purpose of providing and maintaining benefits for the employees of such employer." (*Id.* at 6; *see also* Doc. No. 25-5, at 12 (Plan § 1.09).) It is undisputed that NAS never made contributions to the Pension Fund on behalf of Emberton or any other employee. (*See* Doc. No. 41, Answer ¶ 36 ("Defendants admit that no contributions were made to the Local 572 Pension Fund by NAS.").)[9]

---

[9] The definition of "Employer" does not expressly require the employer to make contributions to the Pension Fund on behalf of the plaintiff. Rather, it appears also to include employers who make contributions to the Pension Fund for some employees, even if not for the particular plaintiff. But the defendants here concede that NAS never made contributions to the Pension Fund for any employee.

8

The plaintiff also argues that the Trustees improperly amended the Plan in January 2019, after Emberton became eligible for Early Retirement Benefits, and made the amendment retroactive to November 20, 2018, before Emberton submitted his application for Early Retirement Benefits. The plaintiff infers from the timing of it that the amendment was intended to make Emberton ineligible for benefits. She contends that the amendment violated the terms of the Plan Summary, insofar as it retroactively reduced Emberton's vested rights. (Doc. No. 45, at 9.)

The defendants, focusing only on the language in the amendment requiring cessation of work "for a minimum period of six full consecutive calendar months" before an employee will be deemed to meet the definition of "Retire," assert that the amendment had no effect on Emberton's eligibility, because he was still working at the time the decision to deny benefits was made. The court finds, therefore, that the defendants have waived any argument that the amendment controls the outcome of this appeal.[10]

The defendants do not address the plaintiff's argument that the plain language of the definition of "Retire" required Emberton to meet only one of the two clauses in the definition set forth in the pre-amendment version of Plan § 1.24. Instead, they argue that the Trustees reasonably concluded that NAS qualified as an Employer, because there was a collective bargaining agreement between NAS "and Air Engineering Metal Trades Council and Affiliated Unions AFL-CIO, and Local 572 is an affiliated local and therefore a party to the agreement." (Doc. No. 27-3, at 2 (April 16, 2019 from Pension Fund to Emberton).)

---

[10] This concession also means that the court has no need to consider the import of that part of the amendment that substituted the word *and* for the word *or* in the definition of "Retire." However, in light of the court's discussion, below, of the interpretation of the word *or* as used in the Plan's pre-amendment definition, the court finds that the substitution amounts simply to a clarification rather than a modification.

9

Regarding the plaintiff's argument that the defendants ignore the second part of the definition of "Employer," which requires not merely a collective bargaining agreement, but a collective bargaining agreement "with the Union requiring periodic payments" to the Pension Fund, the defendants assert that, "[e]ven if this interpretation were to be accepted, Emberton still was not eligible for early retirement benefits as he continued to work in the plumbing and pipefitting industry." (Doc. No. 47, at 5.)

In their own Memorandum in support of their Motion for Judgment, the defendants continue to focus on the second clause of the definition, arguing that the Trustees reasonably determined that Emberton had not retired, because he continued to work "in the trade." (Doc. No. 43-1, at 10.) In response, the plaintiff maintains that Emberton's continued employment as a pipefitter is irrelevant, because he was not employed by an "Employer" as defined by the Plan and, therefore, satisfied the first definition of "Retired."

The Supreme Court has long recognized that the "validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Here, as the plaintiff submits, the plain language of the (original) Plan definition of "Retire" appears to require the participant's "complete cessation" of "any work for an Employer" *or* his "complete cessation" of "any plumbing or pipefitting work in the construction or maintenance industries within the geographical area of the Fund." (Doc. No. 25-5, at 15 (Restated Plan § 1.24).) And the definition of "Employer" also unambiguously requires an employer who has, not only a collective bargaining agreement with the Union, but a collective bargaining agreement "requiring periodic payments to the Trust Fund." (*Id.* at 12 (Restated Plan § 1.09).) And not just any trust fund, the "Fund," defined as the Plumbers and Pipefitters Local #572 Pension Fund. (*Id.* at 16 (Restated Plan § 1.29).) Here, the defendants do

not contend that NAS ever contributed to the Pension Fund, and it is therefore clear that NAS does not qualify as an Employer under the Plan. The Trustee's conclusion to the contrary is arbitrary and capricious, as it simply ignores a large part of the definition of the term. Under the plain language of the Plan, that is, Emberton was no longer employed by an "Employer" at the time he turned 62 and sought early retirement benefits. He was, however, still employed as a pipefitter in the maintenance or construction industry within the geographic area of the Fund. The question, then, is whether it was arbitrary and capricious to read the word *or* in the definition of "Retire" to mean *and*. If the two clauses of the term "Retire" must be read in the disjunctive, then it does not matter whether Emberton was still employed by a non-"Employer" as a pipefitter.

The Sixth Circuit has observed that, typically, "the word *or* does not also mean *and*." *Marquette Gen. Hosp. v. Goodman Forest Indus.*, 315 F.3d 629, 633 (2003). As the court stated there, in the context of interpreting an ERISA plan's definition of claims excluded from coverage, the use of the disjunctive *or* usually means that "one exclusion does not depend on the other, nor does one determine the other." *Id.* As the Seventh Circuit has recognized, however, *or* does in fact sometimes mean *and*. *See Schane v. Int'l Bhd. of Teamsters Union Loc. No. 710 Pension Fund Pension Plan*, 760 F.3d 585, 589–90 (7th Cir. 2014) ("Formal notation aside, the point is merely that determining the meaning of *or* in a sentence is not just a matter of declaring that the word is disjunctive. Context matters.").

Contracts, including ERISA plans "ordinarily should be enforced as written." *Trustees of Sheet Metal Workers Loc. 7 Zone 1 Pension Fund v. Pro Servs., Inc.*, 65 F.4th 841, 847 (6th Cir. 2023) (quoting *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 108 (2013)). Thus, "[w]here the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent." *Id.* (quoting *M & G Polymers USA,*

11

*LLC v. Tackett*, 574 U.S. 427, 435 (2015)). At the same time, courts interpreting ERISA plan provisions "have at times gone beyond the actual language of the plan to ascertain the underlying intent." *Stockman v. GE Life, Disability & Med. Plan*, 625 F. App'x 243, 250–51 (6th Cir. 2015) (citing *Citizens Ins. Co. of Am. v. MidMich. Health ConnectCare Network Plan*, 449 F.3d 688, 692–93 (6th Cir. 2006)). Courts have the "paramount responsibility in construing plan language . . . to ascertain and effectuate the underlying intent." *Id.* (citations omitted). Courts interpreting ERISA provisions must "first reference the plan language itself, but may also consider reasonable inferences and presumptions under the particular circumstances of the claim. The language of a plan is ambiguous only 'if it is subject to two reasonable interpretations.'" *Id.* at 251 (quoting *Citizens Ins. CO.*, 449 F.3d at 694)). "[I]f Plan language, 'however inartfully worded or clumsily arranged, fairly admits of but one interpretation it may not be said to be ambiguous or, indeed, fatally unclear.'" *Id.* (quoting *Reardon v. Kelly Servs., Inc.*, 210 F. App'x 456, 459 (6th Cir. 2006)). Further, an ERISA plan, like any contract, is to be "construed as a whole." *Mitzel v. Anthem Life Ins. Co.*, 351 F. App'x 74, 90 (6th Cir. 2009) (quoting *Alexander v. Primerica Holdings, Inc.*, 967 F.2d 90, 93 (3d Cir. 1992); *Miller v. Monumental Life Ins. Co.*, 502 F.3d 1245, 1250 (10th Cir. 2007)).

In *Schane v. International Brotherhood*, a plan participant and the plan trustees disagreed about the date on which the participant had retired, with the trustees arguing for an earlier date and the participant arguing for a later date, both based on the plan's definition of the term "Retire." The date mattered, because the participant was entitled to an additional $300 per month if he was considered to have retired on the later date. The definition of "retire" was stated in the disjunctive. As relevant to the participant's claim, the definition provided that "retirement" or "retire," prior to a participant's "attainment of Normal Retirement Age" meant

12

> cessation of being employed in Covered Employment *or* engaging in any of the following:
>
> (i) employment with any Contributing Employer . . . .

*Schane*, 760 F.3d at 587 (emphasis added). It was clear from the record that the employee "was employed in Covered Employment until August 2009" and was "was engaged in employment with a Contributing Employer . . . until December 2011." *Id.* at 588. The pension plan argued that the participant retired when he ceased working in Covered Employment, without making any real effort to interpret the plan or to explain why *or*, as used in the definition of "retire," did not really mean *or*.

The plaintiff filed an ERISA action in federal court, arguing that the trustees acted arbitrarily and capriciously by "focusing only on whether he had ceased working for a covered employer, while ignoring whether—and when—he had also ceased engaging in the activities precluded by" the remainder of the definition of "retire." *Id.* The district court rejected the employee's argument, observing that "the plan's definition of 'retirement' was phrased in the disjunctive [to] mean[] 'cessation of being employed in Covered Employment *or* engaging in any of the following . . . .'" *Id.* (emphasis in original).

The Seventh Circuit found that the issue was not as clear as suggested by the district court, undertaking a lengthy analysis of when *or* can means *and*:

> Often, the word *or* does function as a straightforward disjunctive. Consider the following sentence: *"parent" means someone who has a son or daughter.* No one would contend that a man who has a daughter is not a "parent" because he does not also have a son. Clearly, to satisfy this definition, the man must only have a son or have a daughter; he does not need both. In this sentence, the word *or* indicates precisely what the board of trustees thought it did . . . .
>
> But consider another sentence, very similar to the previous one: *"non-parent" means someone who does not have a son or daughter.* Suppose the same man comes to you and claims he is a non-parent. True, he admits, he does have a daughter. However, he is quite certain that he does not have a son. The man notes that the definition of "non-parent" consists of two parts joined with an or, and furthermore

13

that "the word *or* does not also mean *and*." Thus, he reasons, the definition is disjunctive; because he satisfies the first part of the definition (no son), it simply does not matter whether he satisfies the second (no daughter). . . .

The flaw in the man's argument is easy to spot. To be a non-parent, a person must not have a son or daughter—which is to say, he must not have a son *and* he must not have a daughter. Because this man does not satisfy the second part of the definition (he has a daughter), he is not a non-parent, even though he satisfies the first (he has no son).

Note how, in the paragraph above, the *or*-statement ("not have a son or daughter") was rephrased using only an *and* ("not have a son and not have a daughter"). This equivalence arises when a speaker combines a negation (like "not have") with a disjunctive word (like "or"). Another example from a recent book on legal interpretation illustrates the point: "After a negative, the conjunctive *and* is still conjunctive: *Don't drink and drive.* You can do either one, but you can't do them both. But with *Don't drink or drive*, you cannot do either one: Each possibility is negated." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 119 (2012). In propositional logic, this move—the rule of inference that *not (X or Y)* is equivalent to *not X and not Y*—is known as one of "De Morgan's Laws." *See* Lawrence M. Solan, *The Language of Judges* 49 (1993). Formal notation aside, the point is merely that determining the meaning of *or* in a sentence is not just a matter of declaring that the word is disjunctive. Context matters.

*Id.* at 589–90 (some internal citations omitted).

So, in light of these considerations, the court was confronted with the question of whether cessation of covered employment was sufficient to make an employee "retired." And it found that the answer was "not obvious, in part because the plan's language . . . is so inelegant. Certainly the word 'cessation' has the flavor of a negation, but given the unwieldy phrasing there may be room for debate." *Id.* at 590. However, even granting the trustees "substantial room to interpret ambiguous provisions," the court found that their argument on appeal—that the "subparts in the definition of retire are separated by the disjunctive word 'or', . . . indicating that either subpart may constitute 'retirement'"—"must still be compatible with the language and structure of the plan document" as a whole. *Id.* (internal quotation marks and citation omitted). And in that regard, the court noted that the trustees' proposed interpretation could not be reconciled with the plan provision covering the suspension of benefits.

14

More specifically, the plan required a participant who took early retirement to notify the trustees if he became no longer "retired," for purposes of the section defining "retire," and permitted the trustees to suspend the participant's benefits until he once more entered retirement. The court found that the same definition of "retire" applied to both provisions and had to be interpreted consistently in both contexts and that it made no sense to apply the trustees' definition of "Retire" in the latter context:

> In the trustees' view, the fact that an employee has ceased covered employment is itself sufficient to deem that employee retired. This would undercut the suspension-of-benefits provision because a pensioner who resumed work in the same industry and geographic area would nevertheless remain retired. Why? Even though the employee would have resumed employment in one of the activities listed in section 6.05(a)(i)-(v)—and so would not satisfy the second half of the definition of "retirement"—the employee would still continue the "cessation of being employed in Covered Employment" (at least so long as the new employer did not make pension contributions on his behalf). Under the trustees' interpretation, therefore, that employee would still be deemed "retired" despite now working for a competitor—largely vitiating the suspension-of-benefits clause.
>
> . . . .
>
> Remember, the trustees have already argued that the subparts in the definition of retire are separated by the disjunctive word "or," indicating that either subpart may constitute "retirement." They cannot now turn around and say that, for suspension-of-benefits purposes, cessation of covered employment alone is not enough. . . . Once a term has been defined by the Plan and interpreted by the administrator to have a particular meaning, the administrator may not change the meaning when the term is used in a different part of the Plan without any basis in the Plan or in ERISA to do so. To interpret the same defined term in two different ways in this manner is paradigmatically arbitrary and capricious.

*Id.* at 591–92 (internal quotation marks and citations omitted).

Accordingly, the Seventh Circuit found that, to the extent the plan's definition of "retire" was ambiguous, that ambiguity was resolved by looking at the suspension-of-benefits clause, and the "only sensible interpretation" of the provision defining "retire" was that "a participant must

cease both covered employment *and* the activities listed in [the remainder of the provision] to be deemed 'retired.'" *Id.* at 592.[11]

The parties in the present case are on different sides of a nearly identical issue: the plan participant—rather than the Trustees—contends that the disjunctive *or* means he must only meet one part of the definition of "Retire." The Plan's definition of the term here is even more "inelegant" than that at issue in *Schane*, and the Trustees' defense of their interpretation is even more flimsy, insofar as they fail even to engage with the plaintiff's argument that the use of *or* in the definition of "Retire" means that its differing parts must be read in the disjunctive. Further, as set forth above, the Trustees' determination that NAS qualified as an "Employer" is completely unsupported by the Plan itself. Neither party, however, attempts to construe the definition of "Retire" in light of the Plan as a whole, and here too, as in *Schane*, the Plan contains a provision requiring the suspension of benefits for any employee who is reemployed following retirement, under certain circumstances, as follows:

> In the event a Retired Participant receiving monthly benefits under the Plan again becomes employed in plumbing or pipefitting work in the construction or maintenance industries within the Geographical Area of the Fund, his monthly benefit shall be suspended for each month during which he is so re-employed following his working four hundred eighty (480) hours in a calendar year in employment as described above [after earning] total wages in excess of Fifteen Thousand Dollars ($15,000). . . . Upon his subsequent re-retirement, the Retired Participant shall have restored to him the monthly benefit which he was receiving from the Plan prior to his return to work, plus any benefit due calculated on additional Employer contributions which may have been remitted to the Trust Fund during any periods of re-employment.

(Doc. No. 25-5, at 39 (Plan § 10.04).) In other words, this provision presumes that a "Retired Participant," by virtue of his retirement, is *no longer* "employed in plumbing or pipefitting work

---

[11] In light of that conclusion, the court found it unnecessary to remand to the trustees to "make further findings or provide explanation" for its decision. *Schane*, 760 F.3d at 592.

in the construction or maintenance industries within the Geographical Area of the Fund." And if he were deemed to be retired simply by virtue of no longer working for a covered "Employer" under § 1.24, then he would nonetheless still be subject to suspension of benefits for continued employment in "pipefitting work in the construction or maintenance industries within the Geographical Area of the Fund," at least if he worked enough hours and made enough money.

In light of this provision, the use of *or* in the definition of "Retire" makes the definition ambiguous, or susceptible of more than one reasonable interpretation. The court's review of the administrator's interpretation of an ERISA plan under the arbitrary and capricious standard does not mean that the court must accept the administrator's rationale for the denial of benefits. Rather, the question before the court is whether it is "possible to offer a reasoned explanation, based on the evidence, for a particular outcome"—that is, whether a benefits determination is "rational in light of the plan's provisions." *Judge*, 710 F.3d at 658. Here, crediting the Seventh Circuit's suggestion that "the word 'cessation' has the flavor of a negation," *Schane*, 760 F.3d at 590, and applying propositional logic, it is rational in light of the plan as a whole to construe the definition of "Retire" ("a Participant's complete cessation of: (i) any kind of work for an Employer, or (ii) any plumbing or pipefitting work in the construction or maintenance industries within the geographical area of the Fund" (Doc. No. 25-5, at 15)) to mean that a participant is retired if he is *not* engaged in (has ceased) "(i) any kind of work for an Employer" *and* is *not* engaged in "(ii) any plumbing or pipefitting work in the construction or maintenance industries within the geographical area of the Fund." In fact, given the structure and purpose of the Plan as a whole; this interpretation is the only one that makes sense. Accordingly, the Trustees' ultimate decision to deny benefits based on Emberton's failure to show that he was retired under the Plan, despite their failure to articulate a legitimate rationale, was not arbitrary and capricious.

## IV. CONCLUSION

For the reasons set forth herein, the defendants' Motion for Judgment on the Administrative Record (Doc. No. 43) will be granted, and the plaintiff's construed motion for judgment (Doc. No. 44) will be denied. An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge